**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

BARBARA THOMPSON, *et al.*,

   *Plaintiffs*,

  v.

RCX, LLC d/b/a STADIUM CLUB, *et al.*,

   *Defendants*.

Civil Action No. 1:21-cv-03386 (CJN)

**<u>MEMORANDUM OPINION</u>**

  Plaintiffs Barbara Thompson, Alexis Benton, and Emani Burgess, proceeding individually and on behalf of others similarly situated, filed this suit against RCX, LLC (d/b/a "Stadium Club") and Rudolph Cline-Thomas seeking to recover wages allegedly owed to them.  Specifically, Plaintiffs claim that Defendants misclassified them (and others similarly situated) as independent contractors, resulting in violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the District of Columbia Wage Payment and Collection Law ("DCWPCL"), D.C. Code §§ 32-1301 *et seq.*, and the District of Columbia Minimum Wage Revision Act ("DCMWRA"), D.C. Code §§ 32-1001, *et seq.*  Before the Court are two motions:  Defendant Cline-Thomas's motion to dismiss the claims against him, and Plaintiffs' motion for conditional certification of a collective action under the FLSA.[1]  For the reasons discussed below, the Court will deny the motion to dismiss, and it will grant in part and deny in part the motion for conditional certification.

---

[1] Although the Complaint states that each of Plaintiffs' claims is part of their putative collective action, *see* Compl. ¶¶ 100–137, ECF No. 1 (stating that each cause of action is brought "By Plaintiffs Individually and on Behalf of the Collective Against All Defendants"), their motion for conditional certification, ECF No. 26, references only their FLSA claims.  Because Plaintiffs have

## I.    Factual Background

At various times beginning in 2018, Plaintiffs worked as exotic dancers at Stadium Club, an adult entertainment venue in the District of Columbia.  *See* Compl. ¶¶ 11, 32–34, ECF No. 1. They claim that Defendants systematically misclassified dancers as independent contractors and, as a result, wilfully violated federal and D.C. law by failing to pay dancers minimum wage, by requiring dancers to pay "house fees," and by forcing dancers to split their tips with other employees. *Id.* ¶¶ 100–132.  Plaintiffs seek monetary relief through an FLSA collective action on behalf of all exotic dancers who currently work at Stadium Club or who worked there at some point during the three years preceding this lawsuit. *Id.* ¶ 10.

Plaintiffs name Cline-Thomas as a defendant.  According to Plaintiffs, Cline-Thomas is an owner of Stadium Club and qualifies as their employer under the FLSA. *Id.* ¶¶ 12–13.  In particular, they allege that Cline-Thomas, at all times relevant to this lawsuit, "exerted operational and management control over Stadium Club," "controlled the nature, pay structure, and employment relationship of Plaintiffs and FLSA Class Members," "had . . . the authority to hire and fire employees," and "was responsible for the day-to-day affairs of Stadium Club." *Id.* ¶ 13.

## II.    Legal Standards

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Although courts must accept as true all factual allegations in a

---

not moved for conditional certification on their D.C. law claims, this Opinion does not address certification as to those claims.

complaint, the same deference is not owed to legal conclusions. *Id.* Plaintiffs therefore cannot rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* Nor are courts "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The FLSA permits plaintiffs to bring actions on their own behalf and on behalf of "other employees similarly situated." 29 U.S.C. § 216(b). "This unique cause of action, known as a 'collective action,' is not subject to the numerosity, commonality, and typicality rules of a class action under Rule 23." *Hunter v. Sprint Corp.*, 346 F. Supp. 2d 113, 117 (D.D.C. 2004). Instead, courts follow a two-step process to determine whether a collective action is appropriate. First, "the court makes an initial determination to send notice to potential opt-in plaintiffs who *may be* similarly situated to the named plaintiffs with respect to whether a FLSA violation has occurred." *Ayala v. Tito Contractors*, 12 F. Supp. 3d 167, 170 (D.D.C. 2014) (cleaned up). At this stage, plaintiffs need only make "a modest factual showing," which may be based on pleadings and affidavits, that the "named and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id.* (cleaned up). If such a showing is made, the court will conditionally certify the class. Then, at the second stage, "defendants may move at the close of discovery to decertify the conditional class if the record establishes that the plaintiffs are not, in fact, similarly situated." *Id.*

Courts have made clear that "[t]he bar for a plaintiff at the first stage is not high." *Id.*; *see also Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2018) (describing plaintiff's burden as "not particularly stringent," "fairly lenient," "flexible," and "not heavy" (cleaned up)). To secure conditional certification, "all that is needed is some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy

affected a plaintiff and the manner in which it affected other employees." *Ayala*, 12 F. Supp. 3d at 170 (cleaned up). If conditional certification is granted, the court "has discretion with regard to [facilitating] notice" to potential opt-in plaintiffs. *Id.* at 172; *see also Engers v. AT&T*, Civ. A. No. 98-3660, 2007 WL 1557163, at *1 (D.N.J. May 24, 2007) ("Decisions as to whether to facilitate notice to potential plaintiffs, and how to facilitate it, are matters entrusted to the district court's discretion.").

### III.    Analysis

### A.  Motion to Dismiss

Cline-Thomas contends that Plaintiffs fail to adequately allege that he was their employer. *See* Mot. to Dismiss at 5, ECF No. 19. The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).[2] Because this definition is far from precise, courts apply the "economic reality" test to determine whether an individual qualifies as an employer under the FLSA.[3] *See Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 11 (D.C. Cir. 2001). The test considers "whether the putative employer has the power to hire and fire, supervise and control work schedules or conditions of employment, determine rate and method of pay, and maintain employment records." *Villar v. Flynn Architectural Finishes, Inc.*, 664 F. Supp. 2d 94, 96 (D.D.C. 2009).

---

[2] The DCWPCL similarly defines "employer" as any "individual . . . employing any person in the District of Columbia." D.C. Code § 32-1301(1B). And the DCMWRA defines "employer" as "any individual . . . acting directly or indirectly in the interest of an employer in relation to an employee." *Id.* § 32-1002(3).

[3] Given their similarities, courts also apply the economic reality test to determine whether an individual qualifies as an employer under the D.C. statutes. *See Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 1, 5 n.2 (D.D.C. 2010) (DCWPCL); *Villar v. Flynn Architectural Finishes, Inc.*, 664 F. Supp. 2d 94, 96 (D.D.C. 2009) (DCMWRA).

The crux of Cline-Thomas's argument is that the Complaint simply recites the factors of the economic reality test without alleging specific facts. Cline-Thomas notes that the Complaint's only substantive paragraph that specifically references him includes conclusory allegations that he directed and supervised Plaintiffs' work, determined their pay structure, held the authority to hire and fire them, and managed the day-to-day operations of Stadium Club. *See* Compl. ¶ 13. These claims are, in essence, mere restatements of the economic reality factors. And Cline-Thomas stresses that a complaint cannot survive a motion to dismiss if it simply parrots the elements of a cause of action. *See Iqbal*, 556 U.S. at 678.

But the Complaint offers more than "boilerplate allegations that [Cline-Thomas] meets the various prongs of the economic reality test." *Tracy v. NVR, Inc.*, 667 F. Supp. 2d 244, 247 (W.D.N.Y. 2009). It also provides some supporting detail. For example, Plaintiffs allege that "Defendants," including Cline-Thomas, "exercised significant control over Plaintiff during her shifts and would demand that Plaintiff stay until late in the morning if she worked." Compl. ¶ 39. They also allege that "Defendants," again including Cline-Thomas, "actually suspended, fined, fired, or otherwise disciplined entertainers for non-compliance with their rules regarding dancing." *Id.* ¶ 44. And they allege that "Defendants," including Cline-Thomas, "reserved the right to decide what a particular entertainer was allowed to wear on the premises." *Id.* ¶ 45.

These allegations are more than mere recitations of the economic reality factors, and when accepted as true (as they must at this stage), they give rise to a reasonable inference that Cline-Thomas qualifies as Plaintiffs' employer under the relevant statutes. *See Morrison*, 253 F.3d at 11 (noting that, under the economic reality test, "[n]o one factor standing alone is dispositive and

courts are directed to look at the totality of the circumstances").  The Court therefore denies Cline-Thomas's motion to dismiss.[4]

## B. Conditional Certification

Turning to Plaintiffs' motion for conditional certification, the Court concludes that the "low first-stage hurdle" is easily satisfied here.  *See Ayala*, 12 F. Supp. 3d at 170.  That is because Plaintiffs have made the requisite "modest factual showing" that they and the potential opt-in plaintiffs are similarly situated and were victims of a common policy.  *See id.*

Plaintiffs allege that they and the "FLSA Class Members who worked at Stadium Club performed precisely the same job duties," Compl. ¶ 67, "had the same pay structure and were under the same controls," *id.* ¶ 63, and "were subject to the same fees and fines," *id.* ¶ 71.  And they attribute their allegedly common injuries—no hourly wages, forced fees, and lost tips—to Defendants' "practice" of treating all "exotic dancers at Stadium Club as independent contractors." Thompson Decl., ¶ 7, ECF No. 26-1.  Given these allegations, and consistent with how other courts have treated similar cases, conditional certification is appropriate.  *See*, *e.g.*, *Eley v. Stadium Grp.*, Civ. A. No. 14-cv-1594 (KBJ), 2015 WL 5611331, at *2 (D.D.C. Sept. 22, 2015) (conditionally

---

[4] Cline-Thomas cites *Morton v. D.C. Hous. Auth.*, 720 F. Supp. 2d 1, 9 (D.D.C. 2010), for the proposition that the Court cannot read his name into Plaintiffs' allegations against "Defendants" as a group.  But *Morton* does not stand for so broad a principle.  It appears that the central defect in *Morton* was plaintiffs' conclusory allegation that the "[d]efendants knew or should have known that failing to provide the plaintiffs with a clean, safe, and sanitary residence would cause the plaintiffs severe emotional distress."  *Morton* Am. Compl. ¶ 47.  That's a legal conclusion—and for one of the defendants, the court determined that no facts were alleged to support it.  The court accordingly dismissed the claim as to that defendant, stressing that when "a particular mental state is required, courts have held that the pleadings must go beyond general allegations of such a mental state."  *Morton*, 720 F. Supp. 2d at 9.

certifying class of dancers who claimed that they were misclassified as independent contractors); *Woods v. Club Cabaret, Inc.*, 140 F. Supp. 3d 775, 781–82 (C.D. Ill. 2015) (same).[5]

Having concluded that conditional certification is appropriate, the Court must now resolve how potential opt-in plaintiffs should be identified and notified. On this score, the Parties are in near complete disagreement. Plaintiffs seek a three-year limitations period in defining the scope of their collective action; Defendants believe the period should be limited to two years. Plaintiffs wish to send notice via mail, email, and text; Defendants oppose using email and text. Plaintiffs ask that notice be posted in the dressing rooms of Stadium Club and on its social media accounts; Defendants view these requests as unnecessary and intrusive. Plaintiffs request that opt-in forms be returned to Plaintiffs' counsel; Defendants say these forms should be returned to the Court. Plaintiffs want the Court to toll the statute of limitations during the opt-in period; Defendants argue that the Court should deny any tolling. And, on top of these disputes, the Parties disagree on the specific language that should be included in the notices. Despite these differences, however, "[n]either side contests that the Court has discretion with regard to notice." *Ayala*, 12 F. Supp. 3d at 172. With that in mind, the Parties shall comply with the procedures specified below and in the accompanying Order.

---

[5] Defendants' main argument against conditional certification is that the declarations submitted by Thompson and Benton are defective because they are not verbatim recitations of the statutorily required language for unsworn declarations. *See* 28 U.S.C. § 1746. But even if conditional certification here turned on the declarations—and it does not—a declaration's language need only be in "substantially the [same] form" as the language specified in the statute. *Id.* The declarations here satisfy this requirement. *Compare id.* ("I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct."), *with* Thompson Decl. ("I affirm under penalty of perjury under the laws of the United States of America that all statements herein are true and accurate to the best of my knowledge, information and belief.").

*First*, the limitations period will be two years, which will continue to run for each potential opt-in plaintiff until that person files a consent form. *See* 29 U.S.C. § 256(b); *see also Rotari v. Mitoushi Sushi, Inc.*, 448 F. Supp. 3d 246, 254 (E.D.N.Y. 2020) ("[T]he statute of limitations applicable to a plaintiff's claims continues to run until he or she has filed a written consent with the court to join the lawsuit." (quotations omitted)). The statute of limitations under the FLSA is two years unless the plaintiff adequately alleges that the defendant wilfully violated the statute, in which case the statute of limitations is three years. *See Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999). Plaintiffs here allege willful violations, but the Complaint is entirely conclusory on this point—it does not set forth an adequate factual basis for a finding of willfulness. *See Holder v. A&L Home Care and Training Ctr., LLC*, 552 F. Supp. 3d 731, 743 (S.D. Ohio 2021) (applying a two-year limitations period because "Plaintiffs do not plead facts that make their willfulness position plausible on its face, mustering instead only conclusory assertions"). Accordingly, the two-year statute of limitations applies. *See* 29 U.S.C. § 255(a).

*Second*, the Court will allow notices and consent forms to be sent via mail, email, and text. Although some courts have denied requests to use electronic notices, other courts have allowed it. S*ee King v. Voyager 888, LLC*, Civ. A. No. 21-991 (RMM), 2022 WL 3098783, at *5 (D.D.C. Aug. 1, 2022); *see also Ayala*, 12 F. Supp. 2d at 172. Because there appears to be a high turnover rate among exotic dancers—and perhaps a correspondingly high rate of change in physical addresses—the Court concludes that electronic notices are appropriate. *See Vasto v. Credico, (USA) LLC*, Civ. A. No. 15-9298 (PAE), 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016).

*Third*, the Court will require that notices and consent forms be posted in the dressing rooms of Stadium Club, but it will not require any postings on Stadium Club's social media accounts.

*Fourth*, the notices will include instructions for opt-in plaintiffs to return their consent forms to the Clerk of the Court rather than to Plaintiffs' counsel. *See Velasquez v. Digital Page, Inc.*, Civ. A. No. 11-3892 (AKT), 2014 WL 2048425, at *14 (E.D.N.Y. May 19, 2014) (finding that such a requirement avoids discouraging opt-in plaintiffs from obtaining their own counsel).

*Fifth*, the Court will not toll the statute of limitations because Plaintiffs have not shown, nor have they tried to show, that equitable tolling is warranted here. *See Pappas v. District of Columbia*, 513 F. Supp. 3d 64, 86 n.10 (D.D.C. 2021) (declining to toll the statute of limitations because the plaintiffs did not establish that "extraordinary circumstances" existed).

*Sixth*, as for the content of the notices themselves, the following language will be added in the manner proposed by Defendants: "Your rights to bring your own lawsuit are not waived if you decide not to join this lawsuit." Moreover, the notices will include language informing potential opt-in plaintiffs that they may retain their own counsel. The notices need not include the contact information of Defendants' counsel, and they may include the phone number of Plaintiffs' counsel.

*Finally*, because Defendants do not contest the duration of Plaintiffs' proposed opt-in period, the Court will allow an opt-in period of 90 days.

### IV.   Conclusion

For the above reasons, the Court **DENIES** Defendant Cline-Thomas's motion to dismiss, and it **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion for conditional certification. A separate Order will issue.

DATE:  February 22, 2023

CARL J. NICHOLS
United States District Judge

9