# THE UNITED STATES DISTRICT COURT

## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BARBARA THOMPSON, et al | ) | **Case No. 1:21-cv-03386-CJN** |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | **PLAINTIFFS' UNOPPOSED NOTICE OF** |
| | ) | **MOTION AND MOTION FOR APPROVAL** |
| RCX, LLC dba STADIUM CLUB, et al. | ) | **OF FLSA SETTLEMENT** |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| _ | | |

**TO THIS COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** Plaintiffs Barbara Thompson, Alexis Benton, Emani Burgess, Erika Minnick, and Mikayla Williams (collectively, "Plaintiffs") hereby, by and through undersigned counsel, request that this Court approve the settlement agreement reached between Plaintiffs and Defendants RCX, LLC dba STADIUM CLUB and RUDOLPH CLINE-THOMAS.

The Agreements are attached as exhibits to the Declaration of John P. Kristensen, filed concurrently with this Motion. *See* Declaration of John P. Kristensen ("Kristensen Decl.") ¶ 21, Exhibits ("Exs.") 1-5. Plaintiffs further submit to this Court that it should approve the Settlement Agreement for the reasons described in the Memorandum of Points and Authorities. Defendants do not oppose this motion.

**DATED** this October 6, 2023

By: */s/ John P. Kristensen*
John Kristensen, Esq.
USDC DC Bar ID CA00084
**CARPENTER & ZUCKERMAN**
8827 W. Olympic Boulevard
Beverly Hills, California 90211
Telephone: (310) 273-1230
Facsimile: (310) 858-1063
*kristensen@cz.law*
***Attorneys for Plaintiffs***

**DATED** this October 6, 2023

By: */s/ William Schmedlin*
William Schmedlin, Esq.
**TARTER KRINSKY & DROGIN LLP**
1350 Broadway, 11th Floor
New York, NY 10018
Telephone: 212-216-8072
Facsimile: 212-216-8001
*wschmedlin@tarterkrinsky.com*
***Attorneys for Defendants***

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

#### a.  Background

Plaintiffs Barbara Thompson ("Thompson") Alexis Benton ("Benton"), Emani Burgess ("Burgess"), Erika Minnick ("Minnick"), and Mikayla Williams ("Williams") (collectively, "Plaintiffs") were exotic dancers for Defendants RCX, LLC dba STADIUM CLUB and RUDOLPH CLINE-THOMAS (collectively, "Defendants") at Defendants' club located at 2127 Queens Chapel Rd NE, Washington, DC 20018. *See* Declaration of John P. Kristensen ("Kristensen Decl.") ¶ 23.

Thompson, Burgess, and Benton filed the Complaint for this action on December 30, 2021, as a collective action. *See Dkt*. 1. Minnick subsequently opted into this lawsuit on January 14, 2022. *Dkt*. 6. Williams moved for joinder into this action as a plaintiff on May 19, 2023 (*Dkt*. 43) and her motion was granted on July 5, 2023. On July 12, 2023, Plaintiffs filed their notice of settlement. See *Dkt*. 44.

### II.    FACTUAL BACKGROUND

Plaintiffs were exotic dancers at Defendants club, Stadium, within the three (3) years prior to the filing of the lawsuit. Plaintiffs allege that they were misclassified as independent contractors and, were therefore, owed wages due to that misclassification. *See* Kristensen Decl. ¶ 23.

Defendants owned and operated the adult-oriented entertainment facility, Stadium, where Plaintiffs worked, located at 2127 Queens Chapel Rd NE, Washington, DC 20018. The individual owner is/was Rudolph Cline-Thomas. *See* Kristensen Decl. ¶ 25.

### III.    LEGAL NATURE OF PLAINTIFFS' CLAIMS

Plaintiffs alleged the following causes of action: (1) Failure to Pay Minimum Wage Pursuant to FLSA, 29 U.S.C. § 206; (2) Illegal Kickbacks, 29 C.F.R. § 531.35; (3) Unlawful Taking of Tips in Violation of the FLSA, 29 U.S.C. § 203; (4) Forced Tipping, 29 C.F.R. §

531.35; (5) Failure to Pay Minimum Wages Pursuant to District of Columbia's Wage Payment and Collection Law (DCWPCL) and Minimum Wage Act (DCWMWA) D.C. Code 32-1208(B);

Plaintiffs categorized their damage claims into three (3) distinct categories. The first type of damage claims related to Defendants' failure to pay minimum wages pursuant to both federal and state law. *See* 29 U.S.C. §§ 206 of the FLSA, and DCWPCL and DCWMWA, D.C. Code 32-1208(B). The other damage claim under these legal grounds related to Plaintiffs' contentions that Defendants required them to "tip-out" unlawfully and at Plaintiffs' own expense. Plaintiffs' claims addressed two (2) types of tipping violations. Plaintiffs alleged that the dancers were "encouraged" to tip DJs, managers, and security. Plaintiffs argued that this constituted a forced subsidization of Defendants' club, which represented unlawful "kickbacks" in violation of 29 U.S.C. § 203. Plaintiffs further contended that this forced tipping was a violation of 29 C.F.R. § 531.35, which resulted in the dancers' subsidizing the clubs' payment of wages to other underpaid club employees.

Lastly, Plaintiffs claimed that Defendants forced them to pay "house fees" merely for the ability to work at Stadium. Plaintiffs maintain that they were required to pay these house fees to Defendants at the end of each shift, in violation of 29 C.F.R. § 531.35.

Thus, when Plaintiffs ultimately resolved this matter, there were five (5) separate claims, maintained by each dancer, the damage calculation of which went into the valuation of their respective claims. Furthermore, there was a substantial debate between the Parties regarding the number of shifts and dates each Plaintiff worked. Defendants disagreed with Plaintiffs' factual assertions.

## IV.   THE SETTLEMENT AGREEMENT

Under the Settlement Agreement, Defendants have agreed to pay Plaintiffs a gross settlement in the amount of $165,000.00 for their damage claims. An initial payment of $55,000.00 is due within ten (10) days after receipt of Court approval and eight (8) quarterly payments of $13,750.00 will follow. The gross allocations are as follows:

| PLAINTIFF | GROSS SETTLEMENT AMOUNT |
|---|---|
| Thompson | $6,000.00 |
| Benton | $24,000.00 |
| Burgess | $32,000.00 |
| Minnick | $38,000.00 |
| Williams | $65,000.00 |
| **TOTAL** | **$165,000.00** |

*See* Exs. 1-5.

## V.    PLAINTIFFS' DAMAGE ANALYSIS

After conducting discovery, including seeking documentation regarding the dates and times when Plaintiffs worked at Stadium, a more thorough damage analysis was conducted to attempt to discover corroborating evidence of the dates and hours when Plaintiffs claimed to have performed at the venue. Plaintiffs did not have substantial documentary evidence to corroborate their hours worked.

Thompson worked at Stadium from October 8, 2021 to October 22, 2021. Her FLSA claim was only for two weeks between October 8, 2021 and October 22, 2021. At this time the minimum wage in DC was $15.20. During this period, Thompson claimed to have worked approximately six (6) shifts. Thompson would pay around $200.00 in house fees each night. Tompson claimed she would tip approximately $50 per shift. As such, Ms. Thompson's nightly loss, per year, was accounted as follows:

///

///

| Barbara Thompson – October 2021 | |
|---|---|
| Minimum Wages (6-hour shifts) | $547.20 |
| House Fees | $1,200 |
| Tips | $300 |
| **Total Loss:** | $2,047.20 |

Benton had a larger claim, as she worked at Stadium from January 2018 to September 2019. Therefore, based on Defendants' willfulness, Benton's claim would include her work at stadium from December 30, 2018 through September 2019 (9 months). During this time the minimum wage in DC averaged about $13.50. Benton worked approximately eight (8) shifts per month, for a total of seventy-two (72) shifts during her employment with Stadium. Benton would pay around $200.00 in house fees each night and claimed she tipped roughly $40.00 per night. such, Benton's loss was accounted as follows:

| Alexis Benton – December 30, 2018 – September 2019 | |
|---|---|
| Minimum Wages (6-hour shifts): | $5,832.00 |
| House Fees | $14,400.00 |
| Tips | $2,880.00 |
| **Total Loss:** | $ 23,112.00 |

Burgess worked for a similar amount of time at Stadium from November 2018 to December 2019. Therefore, based on Defendants' willfulness, Burgess's claim would include her work at stadium from December 30, 2018, through December 2019 (12 months). During this time the minimum wage in DC averaged about $13.50. Burgess worked approximately eight (8) shifts per month, for a total of ninety-six (96) shifts during her employment with Stadium. Burgess would pay about 200 in house fees per shift and claimed she tipped roughly $45.00 per

night. such, Burgess's loss was accounted as follows:

| Emani Burgess –  December 30, 2018 - December 2019 | |
|---|---|
| Minimum Wages (6-hour shifts) | $7,776.00 |
| House Fees | $19,200.00 |
| Tips | $4,320.00 |
| **Total Loss:** | $31,296.00 |

Minnick worked as a dancer at Stadium from September 2018 to March 2020. Therefore, based on Defendants' willfulness, her FLSA claim is accounted between December 30, 2018 and March, 2020 (15 months). During this time the minimum wage in DC averaged about $13.75. During this period, Minnick claimed to have worked approximately seven (7) shifts per month, for a total of one-hundred and five (105) shifts during her employment with Stadium. Minnick would pay around $200.00 in house fees each night. Minnick claimed she would tip approximately $75 per shift for a total of $7,875.00. As such, Minnick's loss was accounted as follows:

| Erika Minnick – December 30, 2018 - March, 2020 | |
|---|---|
| Minimum Wages (6-hour shifts) | $8,662.50 |
| House Fees | $21,000.00 |
| Tips | $7,875.00 |
| **Total Loss:** | $37,537.50 |

Williams worked as a dancer at Stadium for the longest amount of time, from May, 2017 to September, 2022. Therefore, based on Defendants' willfulness, her FLSA claim is accounted between December 30, 2018 and December 30, 2021 (36 months). During this time the minimum wage in DC averaged about $14.00. During this period, Williams claimed to have

worked approximately six (6) shifts per month, for a total of two-hundred and sixteen (216) shifts during her employment with Stadium. Williams would pay around $150.00 in house fees each night and claimed she would tip approximately $50 per shift. As such, Williams's loss was accounted as follows:

| Mikayla Williams – October 2021 | |
|---|---|
| Minimum Wages (6-hour shifts) | $18,144.00 |
| House Fees | $32,400.00 |
| Tips | $10,800.00 |
| **Total Loss:** | $61,344.00 |

Records maintained by Defendant differed substantially from Plaintiffs' estimates as to the frequency with which each performed at the venue. That discrepancy played a role in weighing the value for each claim. Furthermore, the collectability of the club played a substantial factor in reaching the settlement. *See* Kristensen Decl. ¶ 29.

Plaintiffs' counsel has significant experience in litigating employment cases. The settlement amounts and terms resulted in significant resolutions for the Plaintiffs. *See* Kristensen Decl. ¶ 33-52; Exs. 7-25.

Plaintiffs' counsel incurred $630.40 in costs that are being allocated evenly to all Plaintiffs in their settlement agreements. Plaintiffs' counsel has a lodestar amount of over $81,000.00 and, pursuant to the retainer agreement and the release signed by the Plaintiffs, are entitled to 45% of the settlement, and are receiving $74,250.00 in fees, which is 45%. The lodestar is greater than the amount of fees Plaintiffs' counsel is seeking in attorneys' fees. Plaintiffs' counsel is seeking an inverse multiplier. *See* Kristensen Decl. ¶ 28.

Plaintiffs' counsel litigated this case extensively. The settlement amounts are significant amounts and take into account the following: (a) the amount of time litigated; (b) having to

litigate a number of claims; (c) the ability to reach a resolution and collect, which is relevant in this current and unknown economic environment. *See* Kristensen Decl. ¶ 29.

In exchange for the consideration described above, Plaintiffs have agreed to dismiss their claims and causes of action for alleged violations of the FLSA and any state law claims stemming from Plaintiffs' employment with the Defendants at issue in the Complaint. *See* Kristensen Decl. ¶ 21; Exs. 1-5.

## VI.   LEGAL STANDARD

The FLSA permits settlement or compromise over alleged FLSA violations with (1) supervision by the Secretary of Labor or (2) a judicial finding that the settlement reflects "a reasonable compromise of disputed issues" rather than "a mere waiver of statutory rights brought about by an employer's overreaching." *Stewart v. BAE Sys. Tech. Solutions & Servs*., 2016 U.S. Dist. LEXIS 23675, *3 (D. Md. 2016) (citing Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354 (11th Cir. 1982)). However, "The D.C. Circuit has not opined about whether judicial approval is required of FLSA settlements reached after an FLSA suit has been filed or the related issue of whether such approval is a prerequisite for subsequent judicial enforcement of a private settlement." Sarceno v. Choi, 78 F.Supp.3d 446, 449 (D.D.C. 2015). Therefore, the parties bring these settlement agreements before the Court in an abundance of caution. *See Carrillo v. Dandan, Inc.*, 51 F.Supp.3d 124, 129 (D.D.C. 2014) (noting that "[t]he D.C. Circuit has not opined about whether judicial approval is required of FLSA settlements"). As set forth below, Settlement was a reasonable and well-advised resolution of a bona fide dispute between the parties and therefore, the Settlement Agreement should be approved. See *Sarceno*, 78 F.Supp.3d at 450–51.

When assessing the terms of an FLSA settlement agreement, the court must first determine whether the proposed settlement "resolves a bona fide dispute." *Carrillo*, 51 F.Supp.3d at 131. "A settlement is bona fide if it reflects a reasonable compromise over issues that are actually in dispute[.]" *Sarceno*, 78 F.Supp.3d at 450 (internal quotation marks and

citation omitted). Then, "[o]nce a bona fide dispute has been established, the court must consider whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Id*. at 450 (internal quotation marks and citation omitted). This second inquiry takes into account the "'totality of the circumstances'" with an eye toward whether an FLSA settlement is fair and reasonable. *Carrillo*, 51 F.Supp.3d at 132 (explaining that "the focus is on the fairness of the process used by the parties to reach settlement and the practical ramifications of the settlement"); *see Wolinsky v. Scholastic Inc.*, 900 F.Supp.2d 332, 335 (S.D.N.Y. 2012); *see also Selk v. Pioneers Mem'l Healthcare Dist*., 159 F.Supp.3d 1164, 1173 (S.D. Cal. 2016) (acknowledging that "many courts have adopted a totality of circumstances approach" and thereafter adopting a variation on that approach). The factors that a court considers include "whether the proposed settlement (1) was the product of overreaching by the employer; (2) whether the settlement was the product of negotiation between represented parties following ... [a]rm's length bargaining[;] and (3) whether there exist serious impediments to the collection of a judgment by the plaintiffs." *Carrillo*, 51 F.Supp.3d at 132 (alterations in original) (internal quotation marks omitted).

Furthermore, when a proposed settlement of FLSA claims includes the payment of attorneys' fees, courts regularly assess the reasonableness of the fee award. See, e.g., Wolinsky, 900 F.Supp.2d at 336. In reviewing fee awards in similar contexts, courts in this jurisdiction have considered the percentage of the recovery that is comprised of attorneys' fees, as well as the relationship between the costs incurred and the fees recovered. See *Sarceno*, 78 F.Supp.3d at 452; see also *Carrillo*, 51 F.Supp.3d at 134 (explaining that courts are "reluctant to approve a settlement where the plaintiffs' attorneys receive more in compensation than the plaintiffs themselves").

As discussed below, these factors strongly weigh in favor of the Court approving this settlement.

///

## VII.    THE SETTLEMENT IS A REASONABLE COMPROMISE OF A BONA FIDE DISPUTE

The Court should approve the settlement because it reflects a reasonable compromise of a bona fide dispute regarding Defendants' FLSA liability. The parties' bona fide dispute contains substantial and material issues including but not limited to (1) whether Plaintiffs even qualify as "employees" for the purpose of the relevant wage-and-hour statutes (i.e., it may well be that Plaintiffs are independent contractors with no right to wages or statutory protections, see, e.g., *McFeeley v. Jackson St. Entm't*, 825 F.3d 235, 241–44 (4th Cir. 2016) (assessing whether exotic dancers should be classified as independent contractors or employees); *Reich v. Circle C. Invs. Inc.*, 998 F.2d 324, 327–29 (5th Cir. 1993) (same)) and (2) what number of hours each Plaintiff worked at The Stadium Club during the relevant period. These disputes clearly demonstrate that bona fide issues exist regarding both Plaintiffs' entitlement to any additional compensation at all, and also the amount of wages, if any, that Defendants owe to them. See Sarceno, 78 F.Supp.3d at 450; *Eley v. Stadium Grp., LLC*, 236 F. Supp. 3d 59, 64 (D.D.C. 2017).

There was no collusion in reaching the settlement. The parties were adequately represented by competent counsel experienced in litigating cases under the FLSA, and the settlement was reached as a result of good-faith, arms' length negotiations between the Parties. Carpenter & Zuckerman has tried multiple employment cases and obtained substantial settlements against employers, including against dance clubs. John P. Kristensen has been appointed class and collective counsel many times during their decades of practices. *See* Kristensen Decl. ¶ 31.

Mr. Kristensen recently tried an FLSA dancer case in July 2022 in the Western District of Texas and obtained a verdict on behalf of two dancers. *See Langley v. R P M Dining, LLC*, Case No. 1:20-cv-00890-RP (W.D. Tex. 2020) at Dkt. 139). *See* Kristensen Decl. ¶ 55.

The Parties have vastly different opinions about the classification of Plaintiffs as employees or independent contractors. The Parties engaged in written discovery and exchanged relevant documents, including the agreements between the parties and documents evidencing the

Plaintiffs' performances at Stadium. Counsel for the Parties were cognizant and aware of each side's arguments and positions pertaining to employee classification. The risk for Defendants was that, in a fee-bearing case, the attorneys' fees would dwarf the damages and the risk of a verdict against them would cause additional repercussions to their business. The risk for Plaintiffs was that Plaintiffs' documentation would not be enough to demonstrate the extent of their damages in front of a jury in this District Court. While Plaintiffs took issue with the accuracy of Defendants' records, Plaintiff had scarce records, and thus would have had to rely on their own testimony to rebut Defendants' documents.

Because the Parties disputed these foundational aspects of the case, the purpose of the bona fide dispute requirement has been satisfied here. *See Eley*, 236 F. Supp. 3d at 63-64.

## VIII.   THE SETTLEMENT IS A FAIR AND REASONABLE RESOLUTION

As stated above, the parties were adequately represented by competent counsel experienced in litigating cases under the FLSA, and the settlement was reached as a result of good-faith, arms' length negotiations between the Parties. "The process by which the instant settlement was reached, therefore, bears all the indicia of one that leads to a just outcome." *Carrillo*, 51 F.Supp.3d at 134.

1. Plaintiff's Range of Possible Recovery

To determine the value of the wage claims to each Plaintiff, each Plaintiff individually estimated the total number of hours she worked at The Stadium Club, and that figure was multiplied by the applicable minimum wage in the District of Columbia during the relevant time period. Plaintiffs also estimated the amount of house fees and tips they were allegedly required to pay each shift. The FLSA claims for Thompson were small since she only worked for a couple of weeks, while the claims for Williams are larger as she worked at Stadium for multiple years. The other three Plaintiffs worked for periods of time ranging from nine to fifteen months. These extrapolated figures drove the subsequent settlement negotiations between the parties. Courts have found FLSA cases settling for as low as approximately 25%–35% of the total possible

recovery to be reasonable. *See*, *e.g.*, *Jennings*, 2018 WL 4773057, at *5–*6; *Selk*, 159 F.Supp.3d at 1175; *Glass v. UBS Financial Services, Inc.*, No. 06-CV-4068-MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007), aff'd, 331 F. App'x 452 (9th Cir. 2009); *Greer v. Pac. Gas & Elec. Co.*, No. 15-CV-1066-EPG, 2018 WL 2059802, at *8 (E.D. Cal. May 3, 2018); *Johnson v. MetLife, Inc.*, No. SACV 13-128-JLS, 2014 WL 12773568, at *9 (C.D. Cal. Nov. 6, 2014).

Plaintiffs' range of recovery was potentially greater than the settlement when considering liquidated damages under the FLSA. Nevertheless, this settlement is well within the realm of reasonable for each Plaintiff.

2.  The Complexity, Expenses, and Likely Duration of Litigation

The duration, expense, and ability to collect any judgment all weigh in favor of the settlement. The Plaintiffs are receiving significant settlements through an initial lump sum payment followed by prompt quarterly payments thereafter. Plaintiffs otherwise would likely face myriad difficulties in obtaining a judgment if litigation continued, which makes settlement a reasonable alternative. Defendants' club went out of business and raises concerns about recovery of any judgment. Further, the litigation could have lasted years in this District, and then compounded with enforcing the judgment. This settlement provides valuable finality to Plaintiffs. Courts will approve an FLSA settlement wherein there is a significant risk that litigation could result in a lower recovery for the class or no recovery at all. See *Eley*, 236 F. Supp. 3d at 65; See also *Lockwood v. CIS Servs., LLC*, No. 3:16-CV-965-J-39-PDB, 2019 WL 2226126, at *9 (M.D. Fla. May 3, 2019), *report and recommendation adopted*, No. 3:16-CV-965-J-39PDB, 2019 WL 3383628 (M.D. Fla. June 13, 2019).

3.  Stage of Proceedings and Amount of Discovery Completed

The stage of the litigation was ripe for resolution. The liability issues were not different than other dancer FLSA cases. The main issue would be damages and who had better records.

4.  Opinions and Experience of Counsel

Counsel for Plaintiffs has substantial experience litigating wage and hour cases and

handling complex and class actions. Carpenter & Zuckerman has tried multiple employment cases and obtained substantial settlements against employers, John P. Kristensen has been appointed class and collective counsel many times during their decades of practice. Mr. Kristensen tried an FLSA dancer case in July 2022 in the Western District of Texas and obtained a verdict on behalf of two dancers. *See Langley v. RPM Dining, LLC*, Case no. 1:20-cv-890-RP (W.D. Tex., Dkt. 139).  The counsel requirements are met. Defense counsel was also well-versed in FLSA litigation, including class and collective actions.

    5.  <u>The Risk of Fraud or Collusion</u>

       When considering this factor, Courts have found no existence of fraud or collusion behind a settlement when the Parties engaged in arms' length negotiations to arrive at the Settlement and were only able to settle this matter following mediation presided over by an experienced neutral. See *Eley*, 236 F. Supp. 3d at 65; *Duren v. Int'l Follies, Inc.*, No. 1:19-CV-01512-ELR, 2022 WL 3337249, at *2 (N.D. Ga. June 6, 2022); s*ee also Lynn's Food Stores*, 679 F.2d at 1354 (noting a settlement reached in the "adversarial context" where the plaintiff is represented by counsel is more likely to be fair and reasonable); *see also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (settlement outside FLSA context showed no signs of fraud or collusion where the settlement was reached before an "experienced and well-respected mediator" following arm's-length negotiations and substantial litigation); *see George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d, 1356, 1369-70 (N.D. Ga. 2019) (holding in FLSA hybrid/collective action, settlement of action by mediation with an experienced mediator confirms that the process was procedurally sound and not collusive).

       This factor, therefore, weighs in favor of approval.

**IX.  THE REQUEST FOR ATTORNEYS' FEES AND COSTS IS REASONABLE**

      **A.  *Plaintiffs' Attorneys' Fees Totaling 45% of the Settlement Is a Reduction of the Lodestar and Would Therefore Be a Reasonable Award***

       It is well settled that a reasonable amount of fees is determined pursuant to the "lodestar

approach," which involves calculating "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir.2001) (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)); *Gary v. Carbon Cycle Arizona LLC*, 398 F. Supp. 3d 468, 485 (D. Ariz. 2019) ("[t]o determine a reasonable attorneys' fee under FLSA, the Court uses the lodestar method."); *Mills v. Cabral*, No. CIV.A. 06-10133-RGS, 2010 WL 2553889, at *1 (D.Mass. June 18, 2010) ("[i]n determining an appropriate award of fees and costs under the FLSA, the court employs the lodestar approach."); *Marrotta v. Suffolk Cty.*, 726 F.Supp.2d 1, 25 (D.Mass. 2010) (approving FLSA attorneys' fees at lodestar amount).

In this case, Plaintiffs' counsel has a lodestar of over $81,000.00 and costs. *See* Kristensen Decl. ¶ 27-31; Ex. 6. However, Plaintiffs' counsel is only seeking $74,250.00 in fees, which is less than their lodestar and consists of an equitable 45% of the total settlement. *See id.* Plaintiffs' counsel has been awarded 45% in many FLSA cases. Further, fee amounts in this range have been widely recognized as reasonable. See *Sarceno*, 78 F.Supp.3d at 452 (approving settlement agreement where attorneys' fees represented less than half of the total recovery); *Carrillo*, 51 F.Supp.3d at 134 (approving settlement agreement where attorneys' fees accounted for slightly more than fifty percent of the total recovery).

The fees sought in this matter are commensurate with the time and effort exerted to achieve a favorable settlement and the overall skill of Plaintiffs' attorneys. Plaintiffs' counsel is well versed in both FLSA collective actions and Rule 23 class actions and have achieved numerous successful outcomes. Furthermore, Plaintiffs' attorneys' hourly rates are reasonable and are similar to those approved by other district courts throughout the country. *Id.*

In *Macklin v. Biscayne Holding Corp et al*, 1:19-cv-00561-WES-PAS (D.R.I. 2019), Plaintiffs' counsel sought approval of a similar FLSA settlement involving the wage and hour claims of exotic dancers. *Id.* In the *Macklin* case, Plaintiffs' counsel sought a reduction of their lodestar and a fee award consisting of 45% of the settlement. *See id.* There, Judge Smith found

both the settlement and the attorney's fees and costs to be reasonable. *See id.*

Also, while the lodestar amount is presumed to be a reasonable calculation of attorneys' fees, it is within the Court's discretion to adjust the lodestar figure. *See Marrotta*, 726 F.Supp.2d at 25. Within the past three years alone, three separate judges in California have granted Plaintiffs' counsel's request to apply a negative modifier to the lodestar in order to achieve a fee award comprising of 45% of the total FLSA settlement. *See* Kristensen Decl. at ¶¶ 33-52; Exs. 7-25. District courts in Florida and Wisconsin have followed suit and also granted Plaintiffs' counsel attorney's fees totaling 45% of the settlement. *Id.*

Ultimately, the FLSA settlements in this case represent a far more favorable outcome for Plaintiffs than if they pursued their claims through a Rule 23 class action. By virtue of their sheer size, class actions often lead to a smaller award for each individual plaintiff. In *Hart v. RCI Hosp. Holdings, Inc.*, No. 09 CIV. 3043 PAE, 2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015), a similar exotic-dancer wage-and-hour class case settled for roughly $15 million. *See Hart*, 2015 WL 5577713 at *5. However, the Rule 23 class comprised of 2,208 members and each only received on average $4,254.98. *See id.* Similarly, in *Ortega v. The Spearmint Rhino Companies Worldwide Inc., et al.*, 5:17-cv-00206-JGB-KK (C.D. Cal. July 5, 2021), the district court awarded a net settlement amount of $2,600,000 to an exotic dancer class action. However, the class consisted of 650 individuals and the awards averaged out to only $4,000 per class member. *See id; see also Roe v. Jose Torres L.D. Latin Club Bar, Inc.*, 2020 WL 2494569, at *3 (N.D. Cal. May 14, 2020) (granting preliminary approval of Rule 23 settlement on behalf of exotic dancers that would pay "$836 per class member"); *Doe 1-2 v. Deja Vu Servs., Inc.*, 2017 WL 2629101, at *5 (E.D. Mich. June 19, 2017), *aff'd sub nom. Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886 (6th Cir. 2019) (approving Rule 23 settlement on behalf of exotic dancers, many of whom worked in California, where "the average payment from the cash pool will be around $200"); *Byrne v. Santa Barbara Hospitality Services, Inc.*, C.A. No. 17-00527, Dkt. 178 (C.D. Cal. Dec. 14, 2018) (approving settlement proposing to pay 566

claiming class members between $350,884 to $598,453, or average shares of between $620 and $1,057 per participating class member).

Here, Plaintiffs' attorneys seek an amount totaling less than their lodestar amount of over $81,000.00 in the amount of $74,250.00. *See* Kristensen Decl. ¶ 27; Ex. 6. Moreover, Plaintiffs' counsel experience as a litigator in FLSA actions yielded positive fruits to Plaintiffs, that they otherwise would not have had they not pursuit this matter with them. This is also a modest amount compared to many FLSA settlements and consistent with Congress's intent to incentivize counsels to take minimum wage cases where it would be otherwise uneconomical.

X.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion in its entirety and approve the settlements between Plaintiffs and Defendants.

Dated: October 6, 2023

/s/ John P. Kristensen
John P. Kristensen (*Pro Hac Vice*)
California Bar No. 224132
CARPENTER & ZUCKERMAN
8827 W. Olympic Blvd.
Beverly Hills, CA 90211
Telephone: (310) 273-1230
Fax: (310) 858-1063
*kristensen@cz.law*
*kristensenteam@cz.law*
**Attorneys for Plaintiffs**

**DATED** this October 6, 2023

By: /s/ William Schmedlin
William Schmedlin, Esq.
**TARTER KRINSKY & DROGIN LLP**
1350 Broadway, 11th Floor
New York, NY 10018
Telephone: 212-216-8072
Facsimile: 212-216-8001
*wschmedlin@tarterkrinsky.com*
**Attorneys for Defendants**